IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION (Birmingham)

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| SCP COLDWORKS, LLC, | ) | Case No. 21-02564-DSC-11 |
| | ) | |
| Debtor. | ) | |

**DECLARATION IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION
AND FIRST DAY PLEADINGS OF PHILIP L. HODGES**

I, Philip L. Hodges, declare under penalty of perjury:

1. I am the Manager of SCP Coldworks, LLC, a Delaware limited liability corporation with its principal place of business in Birmingham, Alabama (the "**Debtor**").

2. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with other members of the Debtor's management and advisors, my review of relevant documents, or my opinion based on my experience, knowledge, and information concerning the Debtor's operations and financial condition. If called to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtor.

3. On October 29, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition with this Court for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**").

4. I submit this Declaration to describe the Debtor's background, the circumstances that led to the Debtor's chapter 11 filings, and the Debtor's goals in this case. I also submit this Declaration in support of relief the Debtor has requested in "first day" applications and motions filed with the Court (collectively, the "**First Day Pleadings**"). The

relief sought in the First Day Pleadings is intended to help keep the Debtor operating effectively, minimize potential adverse effects of filing bankruptcy, and ease the administrative burden of operating in chapter 11.

With the First Day Pleadings, the Debtor seeks to, among other things:

a) establish administrative procedures to promote a seamless transition into and through this chapter 11 case;

b) allow for the continued payment of utility, wage, insurance, and tax obligations;

c) ensure the continuation of the Debtor's operations and cash management system without interruption;

d) ensure that the Debtor's creditors, contract counterparties, and vendors understand the implications of this bankruptcy filing, including the imposition of the automatic stay; and

e) obtain debtor-in-possession financing for use in the post-petition operation of the Debtor's business.

5. I am familiar with each of the First Day Pleadings, and I believe that the Debtor would suffer immediate and irreparable harm absent the ability to continue their business operations as sought in the First Day Pleadings. In my opinion, relief sought in the First Day Pleadings is critical to the Debtor's efforts to transition into chapter 11 efficiently and with minimized disruptions to their business operations, thereby permitting the Debtor to preserve and maximize value for the benefit of all their stakeholders while they pursue the strategic and financial objectives these cases were filed to achieve.

6. The Debtor is an Alabama-based frozen sweets retailer, focusing on all-natural gourmet popsicles. Over the last several years many of the Debtor's retail locations have closed as brick and mortar locations became less popular. The Debtor plans to scale back its retail footprint, instead focusing on vending and wholesale sales and distributions while preserving value and exploring future strategic options.

7. The Debtor intends in this bankruptcy to maximize value for its stakeholders through a reorganization of the Debtor's operational and capital structure. The Debtor believes that, delivered through a plan of reorganization, the business will emerge from chapter 11 as a stable enterprise, with a profitable future.

**SUMMARY OF THE FIRST DAY PLEADINGS**[1]

8. Concurrently with the filing of this chapter 11 case, the Debtor has filed the following First Day Pleadings:

(a) Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Payment of Certain Prepetition Taxes and (II) Granting Related Relief ("**Taxes Motion**");

(b) Debtor's Motion for Entry of Interim and Final Orders (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service; (II) Approving the Debtor's Proposed Form of Adequate Assurance of Payment to Utilities; and (III) Establishing Procedures for Resolving Objections to the Debtor's Proposed Form of Adequate Assurance ("**Utilities Motion**");

(c) Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Maintain, Continue, and Renew its Insurance Policies and Pay All Obligations in Respect Thereof and (B) Continue its Premium Financing Program; and (II) Granting Related Relief ("**Insurance Motion**");

(d) Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Pay Certain Employee Compensation and Benefits and (B) Maintain and Continue Such Benefits and Other Employee-Related Programs and (II) Authorizing Financial Institutions to Honor and Process All Related Checks and Transfers ("**Wages and Benefits Motion**");

(e) Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Existing Cash Management System and Bank Accounts; (II) Waiving Certain Bankruptcy Administrator Requirements; and (III) Granting Related Relief ("**Cash Management Motion**"); and

(f) Debtor's Motion (i) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 Authorizing the Debtor to (a) Obtain Postpetition Financing, (b)

---

[1] Any capitalized term not expressly defined in this Declaration has the meaning used in the relevant First Day Pleading.

3

Case 21-02564-DSC11    Doc 32    Filed 11/01/21    Entered 11/01/21 14:33:30    Desc Main
Document    Page 3 of 11

Grant Senior Liens and Superpriority Administrative Expense Status, and (c) Utilize Cash Collateral of Pre-Petition Secured Parties; (ii) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364; (iii) Scheduling a Final Hearing; and (iv) Granting Related Relief ("**DIP Financing Motion**").

(g) Debtor's Motion for Entry of an Order (I) Authorizing the Debtors to Assume Certain Unexpired Leases of Nonresidential Real Property and Other Executory Contracts Pursuant to Section 365 of the Bankruptcy Code and (II) Fixing Cure Amounts With Respect Thereto ("**Lease Assumption Motion**").

9. I have reviewed each of the First Day Pleadings or had their contents explained to me, and I believe that the Debtor would suffer immediate and irreparable harm absent the ability to continue their business operations as sought in the First Day Pleadings. In my opinion, approval of the relief sought in the First Day Pleadings is critical to the Debtor's efforts to reorganize or pursue strategic alternatives for the business, and otherwise conduct this case efficiently, permitting the Debtor to preserve and maximize value for the benefit of all stakeholders.

10. Several of the First Day Pleadings request authority to pay prepetition claims. I am told by the Debtor's counsel that Federal Rule of Bankruptcy Procedure 6003 provides, in relevant part, that the Court may not consider motions to pay prepetition claims during the first 21 days following the filing of a chapter 11 petition, "except to the extent relief is necessary to avoid immediate and irreparable harm." In light of this requirement, the Debtor has limited their requests for immediate authority to pay prepetition claims to those circumstances where the failure to pay such claims would cause immediate and irreparable harm to the Debtor and the estate. Consequently, certain aspects of the relief sought in the First Day Pleadings will be deferred for consideration at a later hearing, as indicated therein.

**Taxes Motion**

11. The Debtor seeks entry of interim and final orders authorizing payment in full, and in cash, of all prepetition sales, use, income, and property taxes, annual report fees and regulatory fees, and all other similar obligations, including any related penalties and interest (collectively, the "**Prepetition Taxes**") that accrued prior to the Petition Date and that will become payable during this chapter 11 case.

12. The Debtor incurred various tax liabilities and fees and in the past, and has generally paid such liabilities to the relevant federal, state, and local authorities (the "**Taxing Authorities**") as they have become due in the ordinary course of business. To the extent it is able, the Debtor is seeking authority to pay such Prepetition Taxes during the first 21 days of these cases.

**Utilities Motion**

13. The Debtor seeks entry of interim and final orders (i) prohibiting Utility Companies from altering, refusing, or discontinuing services to, or discriminating against, the Debtor solely on the basis of the commencement of this chapter 11 case, a debt owed by the Debtor for services rendered prior to the Petition Date, or any perceived inadequacy of the Debtor's proposed adequate assurance of payment to Utility Companies for postpetition services; (ii) approving the Debtor's proposed adequate assurance of payment to Utility Companies for postpetition services; and (iii) approving procedures for resolving objections to the Debtor's proposed adequate assurance of payment to Utility Companies for postpetition services.

14. Preserving Utility Services on an uninterrupted basis is essential to the Debtor's ongoing operations and, therefore, to the success of this case. Indeed, any interruption in Utility Services, even for a brief period, would disrupt the Debtor's ability to

continue operations.

### Insurance Motion

15. The Debtor seeks entry of interim and final orders authorizing the Debtor to (a) maintain, supplement, amend, extend, renew, or replace its Insurance Policies, and (b) pay any obligations, whether arising before or after the Petition Date, under the Insurance Policies, including premiums, deductibles, retention amounts, broker fees, and administrative fees (collectively, the "**Insurance Obligations**").

16. The Debtor maintains insurance policies through a variety of insurance carriers that provide coverage for, among other things, general commercial liability, commercial umbrella liability, and commercial crime liability (the "**Insurance Policies**").

17. The Debtor's business does not involve a high degree of operational risk. Nevertheless, I believe that it is vitally important that the Debtor protect itself against the prospect of uncontrollable costs, and the Debtor's Insurance Policies are designed to safeguard against such contingencies.

18. If the Debtor does not continue to honor its Insurance Obligations, its coverage under the Insurance Policies could be void, potentially causing immediate and irreparable harm to the Debtor's estate. I believe that any lapse in coverage would leave the Debtor exposed to significant—potentially crippling—liability, and it is therefore essential that the Debtor maintain its Insurance Policies throughout this case. Accordingly, I believe that the relief requested in the Insurance Motion is in the best interests of the Debtor's estate, its creditors, and all other parties in interest, and would enable the Debtor to operate its business throughout this case.

**Wages and Benefits Motion**

19. The Debtor seeks entry of interim and final orders authorizing the Debtor, and in the exercise of its business judgment, as deemed necessary to continue to operate and preserve value, to (a) pay all prepetition wages, salaries, commissions, other compensation, and related administration and other incidental costs (all as described below and collectively, the "**Employee Compensation Obligations**") and prepetition employee benefits (the "**Employee Benefit Obligations**"), (b) withhold all federal, state, and local taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations as required by applicable law, (c) pay all employment, unemployment, Social Security, and similar federal, state, and local taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations, whether withheld from wages or paid directly by the Debtor to governmental authorities (collectively, "**Payroll Taxes**"), and make other payroll deductions, including, but not limited to, retirement and other employee benefit plan contributions, garnishments, and voluntary deductions (collectively with the Payroll Taxes, the "**Payroll Deduction Obligations**," and collectively with the Employee Compensation Obligations and Employee Benefit Obligations, the "**Prepetition Employee Obligations**"), and (d) honor and continue their prepetition programs, policies, and practices as described in the Wages and Benefits Motion with respect to the Prepetition Employee Obligations in the ordinary course of business. The Debtor also seeks entry of interim and final orders authorizing all financial institutions to receive, honor, process, and pay any and all checks and wire transfers drawn on the Debtor's accounts in satisfaction of the Prepetition Employee Obligations.

20. Most of the Employees have skills developed through years of experience. To prevent constant—and harmful—turnover, I believe that the Debtor must offer competitive wages and benefits to its Employees.

7

21. I believe that paying Prepetition Employment Obligations will benefit the Debtor's estate and stakeholders by allowing the Debtor's business operations to continue during this chapter 11 case. Indeed, I believe that without the requested relief, the Employees may seek alternative opportunities, perhaps with the Debtor's competitors. Such a development would deplete the Debtor's workforce and hinder the Debtor's ability to continue to operate its core business. The loss of valuable Employees would be distracting and counterproductive at this critical juncture. Accordingly, I believe that the relief requested in the Wages and Benefits Motion is necessary to avoid irreparable harm to the Debtor and to preserve the value of its estate throughout this chapter 11 case and, therefore, is in the best interests of the Debtor, the estate, and all stakeholders.

**Cash Management Motion**

28. The Debtor seeks entry of interim and final orders (i) authorizing the Debtor to continue to use its centralized cash management system (the **"Cash Management System"**) and bank accounts; (ii) waiving certain bank account and related requirements of the Office of the Bankruptcy Administrator; (iii) authorizing the Debtor to continue its existing deposit practices under the Cash Management System (subject to certain reasonable changes to the Cash Management System that the Debtor may implement); and (iv) extending time to comply with Bankruptcy Code § 345(b).

29. The Cash Management System is an integrated network of bank accounts that, I believe, is critical to the Debtor's operations during this case and, in turn, maximizing the value of the Debtor's estate. The Debtor uses the Cash Management System to collect cash from operations and to make cash disbursements—primarily payroll and payments to vendors—to manage its businesses. The Cash Management System also serves a strategic function, facilitating the Debtor's cash monitoring, forecasting, and reporting, and enabling the

8

Debtor to control administration of its bank accounts. The Debtor takes care to record all collections, transfers, and disbursements made through the Cash Management System as and when made.

30. I believe that maintaining the Cash Management System is essential given the volume of transactions the Debtor manages each day. The burden of, among other things, closing the Debtors Bank Accounts, opening new accounts, printing new checks, and revising the Cash Management System would severely hamper the Debtor's ability to serve customers and meet postpetition obligations. Accordingly, I believe that the relief requested in the Cash Management Motion is necessary to avoid immediate and irreparable harm to the Debtor's estate and is in the best interests of all stakeholders.

**DIP Financing Motion**

31. In the DIP Financing Motion, the Debtor requests entry of interim and final orders (each, as applicable, the "**DIP Order**") authorizing it to enter into the DIP Facility under the terms and conditions of that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement among the Debtor and the DIP Lender (the "**DIP Facility Agreement**") and perform under the DIP Facility Documents. The Debtor also requests in the DIP Motion that the Court authorize related relief, including the consensual use of the Pre- Petition Secured Parties' Cash Collateral.

32. A DIP Facility, if approved, will provide working capital critical to funding the Debtor's day-to-day operations. Without access to the DIP Facility, the Debtor would be forced to immediately cease operating, which would result in immediate and irreparable harm to the business and assets by depleting going concern value. Because the Debtor's available and projected liquidity is insufficient to fund their operations, the credit provided under the DIP Facility is necessary to preserve the value of the Debtor's estate for the benefit of all

9

Case 21-02564-DSC11    Doc 32    Filed 11/01/21    Entered 11/01/21 14:33:30    Desc Main
Document    Page 9 of 11

stakeholders.

33. The Debtor urgently needs immediate use of the Pre-Petition Collateral, including the Cash Collateral, and seeks to use all Cash Collateral existing on or after the Petition Date pursuant to the DIP Facility Documents. The Debtor needs the Cash Collateral to pay operating expenses, including payroll, taxes, and vendors, and to ensure a continued supply of supplies and services essential to the Debtor's business. The Debtor's business otherwise will grind to an immediate halt, with damaging consequences for the Debtor and the estate. The Pre-Petition Secured Parties have consented to terms allowing the Debtor to continue using Cash Collateral to operate.

34. I believe it is essential that the Debtor obtain sufficient credit and cash availability to finance this chapter 11 case and instill employees, suppliers and customers with confidence in the Debtor's ability to maximize the value of the estate and to successfully navigate this chapter 11 case. Without these financial arrangements and the confidence they will provide, the Debtor will not have the resources necessary to reorganize.

35. The Debtor seeks immediate interim approval of the DIP Motion. This is because without the use of Cash Collateral and credit under the DIP Facility, the Debtor will be unable to continue operating, and will therefore suffer immediate and irreparable harm. I believe that prompt approval of the DIP Facility not only will permit the Debtor to operate in the ordinary course during the first month of these cases, but also will signal to the Debtor and creditors, customers, and employees that this chapter 11 case will allow the Debtor to achieve orderly restructuring.

## CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted this 1st day of November, 2021.

_____
PHILIP L. HODGES
Manager
SCP Coldworks, LLC

4892-9997-7984, v. 1